IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

| | | |
|---|---|---|
| MAYSVILLE MEDICAL, LLC | : | |
| | : | |
| Plaintiff | : | No. |
| | : | |
| v. | : | COMPLAINT WITH |
| | : | JURY TRIAL DEMANDED |
| | : | |
| ARNOLD FAMILY LIMITED PARTNERSHIP #1 | : | |
| and | : | |
| KATHY STONE | : | |
| Defendant. | : | |

Plaintiff Maysville Medical L.L.C. ("Maysville Medical"), by counsel, files this Complaint against Defendant Arnold Family Limited Partnership ("AFLP") and its managing partner, Kathy Stone.

## JURISDICTION AND VENUE

1. This action is brought pursuant to the American with Disabilities Act, 42 U.S.C. § 12101 et seq.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a), 1367, 42 U.S.C. § 12182(a), and 29 U.S.C. § 794(a).

3. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Maysville Medical is a Kentucky limited liability company.

5. Defendant AFLP is, on information and belief, a Kentucky limited liability partnership.

6. According to the records of the Kentucky Secretary of State, Kathy Stone is managing partner of AFLP. At all times in this matter, Ms. Stone acted in her capacity as managing partner and on her own behalf.

## FACTS

7. Plaintiff Maysville Medical is in the business of providing services to citizens who are addicted to and recovering from opioids and other narcotics and addictive substances. In recent months, Plaintiff developed plans to operate a comprehensive, medically supervised and licensed outpatient mental health and substance abuse treatment services facility in Maysville Kentucky (the "Medical Office").

8. Plaintiff Maysville Medical will use methadone to treat patients at the facility in Maysville.

8. With a heroin epidemic in Kentucky and with substance abuse problems in every community in the Commonwealth, there is an ever-increasing need for a methadone treatment facility in Mason County and surrounding counties in Kentucky and Ohio.

9. Plaintiff Maysville Medical determined that Maysville, Mason County, Kentucky would be a desirable location for the Medical Office.

10. In early October, 2013, Plaintiff Maysville Medical's Managing Member, Gary Gavornik, identified areas of Maysville, Kentucky that were appropriately zoned for

medical offices. He drove through appropriately zoned areas in Maysville, Kentucky, searching for a location for the Medical Office.

11. Gary Gavornik found a four unit mini mall with potential premises for rent at 152 East Second Street, Maysville, Kentucky 41056 (the "Premises").

12. The Premises are owned by Defendant AFLP.

13. The location of the Medical Office is zoned as Downtown Business D-1 in Maysville.

14. Medical offices and clinics are permitted uses in a D-1 district in Maysville.

15. Mr. Gavornik called Kathy Stone ("Ms. Stone") for information about the Premises. Mr. Gavornik spoke with Ms. Stone about the Premises (the "First Phone Call").

16. During the First Phone Call, Ms. Stone informed Mr. Gavornik that she was anxious to rent the open unit in the Premises.

17. Mr. Gavornik arranged to meet with Ms. Stone at the Premises.

18. On October 10, 2013, Mr. Gavornik met with Ms. Stone, and her sister, at the Premises.

19. Ms. Stone showed Mr. Gavornik the unit that was for rent (the "Medical Office").

20. Mr. Gavornik determined that the Medical Office was appropriate to rent for Plaintiff Maysville Medical.

21. During the October 10, 2013 meeting, Ms. Stone stated that the Medical Office was for lease and that there were no other potential tenants.

22. During the October 10 meeting, Ms. Stone stated that the rent for the Medical Office was $1,100.00 per month, but that it was negotiable.

23. During the October 10 meeting, Mr. Gavornik informed Ms. Stone that $1,100.00 per month was acceptable for rent.

24. During the October 10 meeting, Ms. Stone aggressively pursued entering a lease with Plaintiff Maysville Medical.

25. During the October 10 meeting Mr. Gavornik stated that in order to rent the space he would need to confirm that there was proper zoning to operate a behavioral health unit dealing with substance abuse.

26. In response, Ms. Stone called the a Maysville zoning official, Matt Wallingford, during the October 10 meeting, and reported to Mr. Gavornik that the Medical Office was, in fact, zoned correctly for medical, counseling, and professional offices.

27. During the October 10 meeting, Mr. Gavornik asked for the right of first refusal to also rent the unit in the Premises that currently houses a tattoo parlor.

28. Ms. Stone agreed that the lease would contain the right of first refusal and would be subject to a governmental approval clause.

29. During the October 10 meeting, Mr. Gavornik and Ms. Stone agreed that the lease would contain an initial five year term with three five year options to continue.

30.     During the October 10 meeting, Mr. Gavornik and Ms. Stone agreed that the lease would start as soon as a written lease was prepared by Ms. Stone's office and that the rent would start when Plaintiff Maysville Medical received its certificate of occupancy or ninety days from the lease commencement date, whichever came first.

31.     During the October 10 meeting, Mr. Gavornik and Ms. Stone agreed that Defendant AFLP's builders would handle the modest build out of the medical Office and that Plaintiff Maysville Medical would place the full amount of the build out in escrow.

32.     On October 17, 2013, Mr. Gavornik sent an email to Ms. Stone in which he asked if he can draw the floor plans for the building inspector or if it has to be completed by a design firm.

33.     On October 17, 2013 M. Stone sent a response email to Mr. Gavornik, in which she stated:

> Good morning.  Computer problems on my end today.  Hang in there with me.  Contract being prepared as we speak.  Floor plans do not have to be done by your architect.  When you have an idea of what you want email and I'll show them to my builder.

34.     Then, apparently when Defendant AFLP assumed that Plaintiff Maysville Medical was a methadone clinic, it suddenly stopped processing the lease.

35.     John Estill, Esquire, called Mr. Gavornik on October 23, 2013 and stated that he represented Defendant AFLP.

36.     During the October 23, 2013 phone call, Mr. Estill made discriminatory comments to Mr. Gavornik including:

> In a disapproving tone of voice asking if Plaintiff Maysville Medical was going to be using Suboxon or Methadone;
>
> Informing Mr. Gavornik that he would be subjecting Plaintiff Maysville Medical to additional scrutiny because of concerns about methadone treatment facilities;
>
> There are a lot of bad providers out there who had long lines of patients in their parking lot;
>
> He did not want his client to be approached by the Chief of Police and being accused of allowing a fully licensed "methadone clinic" in town.
>
> He wanted to make sure he was not one of those script mills.

37. On October 31, 2013, Mr. Estill informed Mr. Gavornik that references would not be called and that a lease for the Medical Office was not going to be prepared as Defendant AFLP was planning to lease the space to another entity, which was allegedly a government agency.

38. Patients in need of treatment are unable to schedule appointments with Plaintiff Maysville Medical as a result of Defendant's actions.

39  People with addictions in Mason County and surrounding counties are unable to receive treatment for their addictions because the Plaintiff is unable to open its medical offices. As a result of this inability to obtain treatment, citizens are being harmed and their lives are being put in danger.

40. Potential patients are not retaining Plaintiff Maysville Medical for treatment as a result of Defendant's actions.

6

41. Defendant AFLP is discriminating against persons with disabilities living in Mason County and surrounding areas that need methadone treatment to maintain their independence from opiate addiction.

42. Because of Defendant's discriminatory behavior, Plaintiff Maysville Medical has expended time and financial resources and has suffered harm.

43. Because of Defendants' discriminatory behavior, Plaintiff Maysville Medical will suffer a net loss, in an amount to be determined, but which amount increases each day that the office is not open and patients are not treated.

44. Plaintiff Maysville Medical has suffered economic injury from this violation and continues to suffer economic injury each day that the medical offices are not open.

## COUNT I
## VIOLATION OF THE ADA

45. Plaintiff Maysville Medical incorporates by reference paragraphs 1 through 44 of this Complaint as if set forth fully here.

46. Recovering addicts are considered persons with disabilities under the ADA. <u>MX Group, Inc. v. City of Covington</u>, 293 F.3d 326, 337-339 (6th Cir. 2002).

47. Plaintiff Maysville Medical has standing to seek relief on its own behalf and on behalf of its clients under the ADA.

48. Title III of the ADA prohibits discrimination on the basis of disability the denial of the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

49. The terms "public accommodations" include, among other things, professional offices of a healthcare provider. 42 U.S.C. § 12181(7)(F).

50. The Medical Office is a public accommodation within the meaning of the ADA.

51. Similarly, the Premises are considered a public accommodation within the meaning of the ADA.

52. A public accommodation shall not exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association. 28 C.F.R. § 36.205.

53. Defendant failed to lease the Medical Office to Plaintiff Maysville Medical because of its association with patients who are treated with methadone in violation of the ADA

54. Because of Defendant's discriminatory actions, Plaintiff Maysville Medical expended time and financial resources and suffered harm and economic injury.

## COUNT II
## VIOLATION OF KRS 344.120

55. Plaintiff Maysville Medical incorporates by reference paragraphs 1 through 54 of this Complaint as if set forth fully here.

56. KRS 344.120 states: "it is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in KRS 344.130 on the ground of disability, race, color, religion, or national origin."

57. The actions of the Defendants denies this Plaintiff the opportunity to provide services to those who are disabled and denies those who are disabled from receiving treatment and deny them facilities and other public accommodations on account of their disabilities.

58. KRS 344.450 provides an action for damages or injunction for any person injured by violation of any provision of Chapter 344. The statute reads as follows: " Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter."

## REQUESTED RELIEF

WHEREFORE, Plaintiff Maysville Medical requests that this Honorable Court award it the following relief:

1. Find and declare that Defendants' action and inaction in failing to permit Plaintiff Maysville Medical to occupy the Medical Office violates the ADA and KRS 344.120.

2. Issue an injunction requiring Defendants, within five (5) days of Court Order, to issue Plaintiff Maysville Medical, a lease for occupancy for a methadone treatment facility at the Medical Office.

3. For an award of the Plaintiff's actual damages from the actions of the Defendants, in an amount to be determined, including loss of profits resulting from the Plaintiff's inability to open its medical offices.

3. Award Plaintiff Maysville Medical its reasonable attorney fees and costs.

4. Award any other relief this Honorable Court deems appropriate.

## JURY TRIAL DEMAND

Maysville Medical, LLC requests trial by jury in this case.

<u>/s/David E. Davidson</u>
David E. Davidson, Esq.
Attorney for Plaintiff
Strauss Troy Co., LPA
Suite 1400
50 East RiverCenter Boulevard
Covington, Kentucky  41011
(513) 621-8900

John S. Harrison, Esquire
Attorney I.D. #53864
38 W. Market Street
Bethlehem, PA  18018
Telephone No.:  (610) 865-3664
Facsimile No.:  (610) 865-0969
*Attorneys for Plaintiff*
